IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEREMY JEROME OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV921 |
| | ) | |
| JERAMIE WILLIAM BAITY, | ) | |
| in his individual and official capacity, | ) | |
| NORTH CAROLINA HIGHWAY | ) | |
| PATROL, HEAD SHERIFF WILLIAM | ) | |
| T. SCHATZMAN, in his official capacity, | ) | |
| TRAVELERS CASUALTY & SURETY | ) | |
| COMPANY OF AMERICA, and | ) | |
| FORSYTH COUNTY, NORTH | ) | |
| CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging violations of the United States Constitution. Plaintiff also alleges state law claims under the North Carolina State Tort Claims Act, as well as state law claims for assault and battery. The following motions are before the Court: (i) Motion for Summary Judgment (on behalf of Defendants William T. Schatzman, in his official capacity, Travelers Casualty and Surety Company of America, and Forsyth County, North Carolina) (collectively, "the Schatzman Defendants") (ECF No. 30); and (ii) Defendants Jeramie William Baity and the North Carolina Highway Patrol's Motion for Summary Judgment (collectively, "the Baity Defendants") (ECF No. 35).

For the reasons set forth below, the Court grants the Schatzman Defendants' motion, and the Court grants in part and denies in part the Baity Defendants' motion.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding that "unsupported speculation . . . is not enough to defeat a summary judgment motion").

In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials," *Liberty Lobby*, 477 U.S. at 248, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient

2

proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## II.    FACTS

During the late evening hours of November 1, 2011, Defendant Jeramie William Baity ("Baity") of the North Carolina Highway Patrol encountered Plaintiff at an Exxon Mobile gas station in Forsyth County, North Carolina. (ECF No. 40-2 at 14.) Baity suspected that Plaintiff was "noticeably impaired" and asked whether he (Plaintiff) had been drinking. (ECF No. 36-1 ¶¶ 5–6; *see* ECF No. 40-2 at 14:16–17.) Plaintiff responded that he had "one or two beers" earlier in the evening. (ECF No. 40-2 at 14:17–18.) Baity attempted to administer a breathalyzer test which Plaintiff refused. (ECF No. 36-1 ¶ 7; ECF No. 40-2 at 14:18–19, 16:3–8.) Baity then handcuffed Plaintiff and placed him under arrest for Driving While Impaired. (ECF No. 36-1 ¶ 8.) The manner in which Baity placed the handcuffs on Plaintiff was painful to Plaintiff. (ECF No. 1 ¶ 14; ECF No. 40-2 at 16:14–19.) Plaintiff believes "to the best of [his] memory" that, during his arrest, he was thrown to the ground "out of dash-cam range" by Baity before being placed in Baity's patrol car. (ECF No. 40-2 at 18:11–17.) Baity then drove Plaintiff to the Forsyth County Detention Center ("Detention Center") in Winston-Salem, North Carolina. (ECF No. 1 at ¶ 15.)

Upon arrival at the Detention Center, Baity pulled into the sally port area and removed Plaintiff from his patrol car. (*See* ECF No. 1 ¶ 16; ECF No. 40-2 at 20:19–23.) Baity placed Plaintiff in a standing position against the patrol car. (ECF No. 40-2 at 20:23–24.) Plaintiff then fell, face-forward, "hitting his face and head on the pavement." (ECF No. 36 at 5 (citing

3

Request for Admission No. 10)[1].) Following Plaintiff's fall, medical personnel were "summoned" from the Detention Center to assist Plaintiff. (*Id.* (citing Request for Admission No. 12).) Plaintiff was placed in a wheelchair (ECF No. 40-2 at 26:8–13) and escorted inside the Detention Center (ECF No. 1 ¶ 16). While in custody at the Detention Center, Plaintiff was slammed into the wall and ground multiple times, and he "believe[s]" that he was kicked, punched, grabbed by the back of the neck, and "almost killed" by Baity and another officer whom Plaintiff has identified as "Ford"[2]. (ECF No. 1 ¶ 17; ECF No. 40-2 at 21:9–24, 22:1–4.) Plaintiff made multiple requests for medical attention but those requests were ignored by Baity and the Detention Center staff. (ECF No. 1 ¶ 21, 22, 25; ECF No. 40-2 at 22:19–21.)

Plaintiff was processed at the Detention Center, including receiving an Intake Screening, and having his photograph taken. (ECF No. 1 ¶¶ 22, 24; ECF No. 36-3; ECF No.

---

[1] The Baity Defendants argue that their Requests for Admissions, which were served on Plaintiff's counsel on May 11, 2015 should be deemed admitted because "Plaintiff failed to respond . . . within the . . . allotted time frame, and he did not move . . . this Court to deem his eventual answers (served on counsel for the Baity Defendants on January 11, 2016) as timely." (ECF No. 36 at 4.) The Court agrees. The Fourth Circuit has long held that unanswered requests for admissions are deemed admitted. *Batson v. Porter*, 154 F.2d 566, 568 (4th Cir. 1946). Moreover, as provided in Rule 36(a) of the Federal Rules of Civil Procedure, a matter which is the object of a request for admission "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Fed. R. Civ. P. 36(a)(3). Further "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Plaintiff has made no such motion, nor has he sought leave of this Court to file untimely responses. Additionally, despite the fact that Plaintiff's responses to the Baity Defendants' Requests for Admissions were served more than six (6) months after the deadline, Plaintiff has failed to offer an explanation for his failure to timely respond. Instead, Plaintiff's only argument on this issue is that "[t]here are multiple disputed facts in this case, even if the Court were to allow admission of facts under Defendant's [sic] Requests for Admission which were responded to with the extended discovery deadline of January 29, 2016". (ECF No. 40 at 5.) Therefore, in accordance with the Federal Rules of Civil Procedure and the well-settled case law in this Circuit, the matters addressed in the Baity Defendants' Requests for Admissions are deemed admitted.

[2] Plaintiff has described "Ford" as a "tall, red-head sheriff guy" (ECF No. 40-2 at 22:1–2) while Schatzman, in his affidavit, testified that "[t]here was no male, red-headed officer named 'Ford' affiliated with the Forsyth County Sheriff's Office in November of 2011." (ECF No. 31-1 ¶ 12.) "Ford" has not been named by Plaintiff as a Defendant in this action.

4

38-1.)  At some point after processing, Plaintiff was asked to submit to a breath alcohol test, which he refused.  (ECF No. 36 at 5–6 (citing Request for Admission No. 15); ECF No. 40-2 at 22:12–18.)  Following Plaintiff's refusal, Baity appeared with Plaintiff before a Magistrate where he obtained a search warrant for Plaintiff's blood.  (ECF No. 36 at 6 (citing Request for Admission No. 16).)  Baity then transported Plaintiff to Forsyth County Emergency Services ("EMS") to have his blood drawn. (ECF No. 36-1 at ¶ 20–21; ECF No. 36-2 at 1.)  Although Plaintiff was bleeding, had abrasions on his face and complained of jaw pain to the EMS, he refused to submit to medical assessment and treatment for his injuries.  (ECF No. 36-2 at 1, 2.)

Plaintiff remained in custody until his release at approximately 1:00 p.m. on November 2, 2011.  (ECF No. 1 ¶ 26.)  Upon his release from the Detention Center, Plaintiff went home and three days later, on November 5, 2011, sought medical treatment for injuries to his jaws, teeth, and lip at Novant Health Forsyth Medical Center.  (*Id.* ¶¶ 26–28; ECF No. 38-2 at 11–12; ECF No. 40-2 at 29:11–12.)

## III.   DISCUSSION

### a.  The Schatzman Defendants' Motion for Summary Judgment

#### i.  <u>Federal claims against Sheriff William Schatzman ("Schatzman"), in his official capacity</u>

Plaintiff has sued Schatzman, in his official capacity as Sheriff of Forsyth County, North Carolina[3], for constitutional violations under § 1983.  (ECF No. 1 ¶¶ 35–36, 43–45.)  A

---

[3] Schatzman serves as "the duly elected Sheriff of Forsyth County, North Carolina," having "held [the] office since 2002."  (ECF No. 31-1 ¶ 2.)

42 U.S.C. § 1983 suit against a Sheriff, in his official capacity, constitutes a suit against the "entity of which an officer is an agent," in this case, the Forsyth County Sheriff's Office[4] ("the Sheriff's Office"). *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 685, 690 (1978)); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013); *Gantt v. Whitaker*, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002). Plaintiff's claims in this action are, therefore, claims against the Sheriff's Office.

Under § 1983, a person who, under color of law, deprives another of their constitutional rights shall be liable. 42 U.S.C. § 1983. The Supreme Court has held that municipalities and other local governments are included among those "persons" to whom § 1983 applies. *Monell*, 436 U.S. at 690. As a general rule, an action of liability against a municipality under § 1983 only exists when its official policy or custom causes a deprivation of an individual's constitutional rights. *See id.* at 690–91; *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). A municipality cannot, however, be held liable under § 1983 on a *respondeat superior* theory, "solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Rather, the municipality itself, through formal policy or through widespread and pervasive discriminatory practices, must have caused the alleged constitutional violation in order to be held liable. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 658); *Carter*, 164 F.3d at 218; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (explaining that "municipal liability is limited to action for which the municipality is actually responsible"); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) ("Not every deprivation of a constitutional right

---

[4] "In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes . . . ." *Little v. Smith*, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000).

will lead to municipal liability. Only in cases where the municipality causes the deprivation

'through an official policy or custom' will liability attach." (quoting *Carter*, 164 F.3d at 218)).

As explained by the Fourth Circuit:

> A policy or custom for which a municipality may be held
> liable can arise in four ways: (1) through an express policy,
> such as a written ordinance or regulation; (2) through the
> decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train
> officers, that "manifest[s] deliberate indifference to the
> rights of citizens"; or (4) through a practice that is so
> "persistent and widespread" as to constitute a "custom or
> usage with the force of law."

*Lytle*, 326 F.3d at 471 (alteration in original) (quoting *Carter*, 164 F.3d at 217). Of importance,

as articulated by the Fourth Circuit, "not every decision by every municipal official will subject

a municipality to section 1983 liability. Rather '[m]unicipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy . . . .'" *Riddick v. Sch. Bd.*

*of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (alteration in original) (quoting *Pembaur*, 475

U.S. at 481). State law determines which official possesses final policymaking authority, *id.*,

and under North Carolina law, a Sheriff "is the ultimate policymaker for the county regarding

matters of law enforcement." *Wilcoxson v. Buncombe Cty.*, 129 F. Supp. 3d 308, 317 (W.D.N.C.

2014); *see Vaught v. Ingram*, No. 5:10-CT-3009-FL, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24,

2011) (finding that in North Carolina, "[t]he Sheriff has final policymaking authority over

personnel matters . . . [and] has the sole statutory responsibility for the care and custody of

the inmates at the county jail") (citations omitted) (citing N.C. Gen. Stat. §§ 153A-103, 162-

22).

Thus, at this juncture, to survive summary judgment, Plaintiff must present sufficient evidence to show that any alleged deprivation of his constitutional rights were directly caused by an official policy or custom of the Sheriff's Office, or by the actions of Schatzman as the final policymaking authority for the Sheriff's Office. *See Liberty Lobby*, 477 U.S. at 256 (finding that the non-moving party "may not rest upon mere allegation or denials . . . but must set forth specific facts showing that there is a genuine issue for trial").

Plaintiff's § 1983 claim against the Sheriff's Office include: (i) use of excessive force; (ii) deliberate indifference to Plaintiff's emergency medical needs; and (iii) failure to provide supervision and proper training. The Court will address each claim separately.

### 1. Excessive force

As to Plaintiff's claim of excessive force under § 1983, Defendants argue that Plaintiff has failed to provide "any evidence that the alleged constitutional violations were caused by an official policy of the Forsyth County Sheriff's Office, or that the alleged constitutional violations were caused by the actions of an individual with final policymaking authority." (ECF No. 31 at 7.) The Court agrees.

Evidence of a municipality's official policy or custom "may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Carter*, 164 F. 3d at 218 (citations omitted). Further, an action against a municipality will not lie where plaintiff merely "identif[ies] conduct properly attributable to the municipality," rather, "plaintiff must also demonstrate that, through its

8

*deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

Here, not only has Plaintiff failed to offer any such evidence but, as Schatzman points out in his Reply brief, Plaintiff makes no argument regarding his § 1983 claim for excessive force. (ECF No. 39 at 2.) Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue. *See Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) (stating "when a party does not address arguments raised by a movant, the court may treat those arguments as conceded"); *Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (concluding that "[i]n Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address . . . his hostile work environment claim [and in so doing], Plaintiff concedes that he has not stated a hostile work environment claim"); *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1411 (D. Colo. 1995) (stating that the defendant "apparently concedes Plaintiffs' limitations analyses . . . having failed to address either in his brief"). Plaintiff has, thus, effectively conceded the issue.

Moreover, evidence in the record shows that, at the time of Plaintiff's arrest and detention at the Detention Center, there was a policy in effect requiring members of the Sheriff's Office to "use only the amount of force necessary to accomplish the law enforcement mission . . . in accordance with all applicable laws and guidelines." (ECF No. 31-3 at 49; *see* ECF No. 31-1 ¶ 11.) Accordingly, given Plaintiff's failure to address this issue in his summary judgment response, and his failure to provide affirmative evidence in support of his § 1983 claim for excessive force based on municipal liability, the Court concludes that Schatzman is entitled to summary judgment on this claim.

9

## 2. Deliberate indifference to Plaintiff's emergency medical needs

Defendant argues that Plaintiff has failed to show that any alleged deliberate indifference to Plaintiff's medical needs was the direct result of an official policy or custom of the Sheriff's Office, or of a decision by Schatzman. (ECF No. 31 at 5.) In response, Plaintiff seemingly attempts to create a dispute of material fact by asserting that:

> At issue in this case would be Plaintiff's testimony that, despite being initially screened upon entry to the jail, [Plaintiff] still slipped through the cracks of the system and his emergency condition was not detected in time before his release. Were that the case, the policy in place set forth by Defendant Schatzman would have led to a violation of Plaintiff's federally protected rights.

(ECF No. 38 at 6.) Plaintiff's argument misses the point. Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F. 2d 213, 214 (4th Cir. 1985). Here, Plaintiff must point to specific evidence in the record to show that the alleged deliberate indifference to his medical needs was causally linked to the official policy of the Sheriff's Office, or to decisions made by Schatzman. Plaintiff fails to do so.

Plaintiff does, however, pointedly acknowledge that, pursuant to the Forsyth County Sheriff's Office Standard Operating Procedures[5], there were policies in effect at the time of the incident for addressing the medical needs of inmates and or detainees at the Detention Center. (ECF No. 38 at 6.) As Plaintiff himself states, "Forsyth County Jail has policies in

---

[5] The procedures require, among other things, initial medical screenings and physical examinations of newly arriving inmates or arrestees, as well as the provision of "emergency medical care and treatment when needed." (Office of the Sheriff, Forsyth County, N.C., Standard Operating Procedures, ECF No. 31-1 at 18.) The policies further govern the provision of emergency medical services to inmates or arrestees. (*Id.* at 25–26.)

place for when emergency medical service is needed, including but not limited to transporting the inmate to Novant Memorial Hospital or North Carolina Baptist Hospital." (ECF No. 38 at 6.)

In addition, the record reflects that when Plaintiff was seen by Forsyth County Emergency Services, Plaintiff "refused to allow for assessment," despite complaining of "jaw pain and a possible broken jaw." (ECF No. 36-2 at 1–2.) Plaintiff offers no affirmative evidence to the contrary – beyond speculation and bare allegations – to support his claim of deliberate indifference to his medical needs by the Sheriff's Office. As a result, the Court finds that Schatzman is entitled to summary judgment as to this claim.

### 3. Failure to provide proper training and/or supervise

Schatzman argues generally that summary judgment should be granted as to Plaintiff's claims of failure to provide proper training and failure to supervise because Plaintiff has failed to provide any supporting evidence to satisfy the elements of these claims. (ECF No. 31 at 10, 14.) The Court agrees.

To show municipal liability under § 1983 for failure to provide proper training, Plaintiff must present evidence of a policy or custom of deficient training which "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. Further, Plaintiff "must establish a direct causal connection between specific deficiencies and a specific injury." *Semple v. City of Moundsville*, 195 F.3d 708, 713 (4th Cir. 1999). "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." *Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994).

Here, in the face of Schatzman's Affidavit detailing the training standards and requirements of the Sheriff's Office, as "set forth by the North Carolina Sheriffs' Education and Training Standards Commission and the North Carolina Justice Academy," (ECF No. 31-1 ¶¶ 14–15), Plaintiff has offered no evidence to meet his burden on this claim. In fact, Plaintiff has altogether failed to even make any arguments as to this claim in his summary judgment response brief. The Court therefore treats this issue as having been conceded by Plaintiff. *See Brand*, 352 F. Supp. 2d at 618 (finding that Plaintiff concedes claim not addressed in his brief in response to Defendants' motion for summary judgment).

To establish supervisory liability under § 1983, Plaintiff must point to evidence showing:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).

Here again, not only has Plaintiff failed to proffer any such evidence to show Schatzman's supervisory liability, but Plaintiff has failed to even address this issue in his summary judgment response brief. Accordingly, Plaintiff has conceded this issue and the Court finds that Schatzman is entitled to summary judgment on Plaintiff's § 1983 claims of failure to provide proper training and supervise.

ii. <u>Federal claims against Travelers Casualty and Surety Company of America ("Travelers")</u>

Travelers argues, and Plaintiff explicitly concedes, that Plaintiff's federal claims fail as a matter of law because § 1983 applies only to state actors who violate the constitutional rights of another. (ECF No. 31 at 18; ECF No. 38 at 6–7.) Indeed, liability under § 1983 does not apply to private corporations. *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). Because Travelers is not a "person" for purposes of imposing liability under § 1983, Travelers is entitled to judgment as a matter of law as to Plaintiff's federal claims.

iii. <u>Federal claims against Forsyth County, North Carolina ("Forsyth County")</u>

Forsyth County argues that it is entitled to summary judgment on Plaintiff's federal claims because "a Sheriff is the sole law enforcement policymaker in his office and . . . [as such] Forsyth County is not liable for any alleged actions or omissions of the Sheriff or those of his detention staff." (ECF No. 31 at 14, 15.) Here, too, Plaintiff explicitly concedes that "Defendant['s] assessment of the law is correct" and "[t]hus, Plaintiff's evidence would be insufficient to prove . . . a § 1983 claim" against Forsyth County. (ECF No. 38 at 6–7.) Given Plaintiff's explicit concession on this issue, there is no dispute between the parties as to federal claims against Forsyth County and the Court will grant summary judgment as to Plaintiff's § 1983 claim against this Defendant.

iv. <u>State law claims under the North Carolina Tort Claims Act ("the Act")</u>
<u>against Schatzman and Forsyth County</u> [6]

Schatzman and Forsyth County contend that the Act "does not apply to local governmental entities such as Forsyth County and [the Sheriff's Office]," and as such, plaintiff is precluded from bringing such a claim against them. (ECF No. 31 at 16.) Under the Act, the North Carolina Industrial Commission ("the Commission") is the established forum for "hearing and passing upon tort claims against . . . agencies of the State." N.C. Gen. Stat. § 143-291(a). The Act does not apply to county agencies nor to local government entities. *See AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576, 578 n.3 (4th Cir. 2014) ("The Act does not apply to local governments or their agents . . . .") Thus, the Sheriff, as a local government official, and Forsyth County as a local government entity, are not subject to liability under the Act. *See Harter v. Vernon*, 101 F.3d 334, 342–43 (4th Cir. 1996) (explaining that "the North Carolina legislature itself has provided that '[t]he sheriff is the only officer of local government required by the Constitution" (alteration in original) (quoting N.C. Gen. Stat. § 17E-1)). Further, claims brought under the Act must be heard before the North Carolina Industrial Commission. *See* N.C. Gen. Stat. § 143-291(a).

As argued by Defendants in their Reply brief, Plaintiff, yet again, makes no argument as to his claims against Schatzman and Forsyth County under the Act, and has therefore conceded the issue as to these claims. (ECF No. 39 at 2.) The Court agrees. *See Brand*, 352 F. Supp. 2d at 618. Because the Act does not apply to Schatzman and Forsyth County, and

---

[6] Plaintiff asserts claims under the Act against all Defendants, except Travelers Casualty & Surety Co. of America. (ECF No. 1 ¶¶ 47, 48.)

because Plaintiff has raised no argument in response to this issue, summary judgment will be granted to Schatzman and Forsyth County on Plaintiff's claims under the Act.

### b. The Baity Defendants' Motion for Summary Judgment

#### i. <u>Federal claims against the North Carolina Highway Patrol ("NCHP")</u>

The NCHP argues that they are entitled summary judgment on Plaintiff's federal claims because § 1983 does not provide a claim for relief against state agencies. (ECF No. 36 at 9–10.) As correctly explained by Defendants, the Supreme Court has held that, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff "concedes that the Defendants' assessment of the law is correct" on this point. (ECF No. 40 at 6.) In so doing, Plaintiff acknowledges that the NCHP, as a state agency, is not a "person" under § 1983, and therefore cannot be held liable for the alleged constitutional violations against Plaintiff. (*Id.*) The Court, therefore, finds that the NCHP is entitled to judgment as a matter of law as to Plaintiff's § 1983 claims. In light of this finding, the Court need not address the substantive merits of Plaintiff's federal claims against the NCHP.

#### ii. <u>State law claim under the North Carolina Tort Claims Act ("the Act") against the NCHP</u>

Because, as discussed above, the Court will grant summary judgment on all of Plaintiff's federal claims against the NCHP, the Court declines, in its discretion, to exercise supplemental jurisdiction over the related state law claim under the Act.[7]

---

[7] Pursuant to 28 U.S.C. § 1367(c), in cases involving a federal question, "the district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Moreover, as argued by the NCHP without opposition from Plaintiff,[8] this Court lacks jurisdiction to hear claims brought under the Act. (ECF No. 36 at 10–11.) Under the well-settled doctrine of sovereign immunity, "a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952); *Will*, 491 U.S. at 66. Likewise, an agency of the state may only be sued when it has authorized such suits by statute. *Smith*, 235 N.C. at 1, 68 S.E.2d at 787. Statutes constituting such a waiver under North Carolina law "must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38, 299 S.E.2d 618, 627 (1983). Here, the statutory language specifically confers jurisdiction over claims brought under the Act on the North Carolina Industrial Commission. *See* N.C. Gen. Stat. § 143-291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against . . . agencies of the State."). Accordingly, the Court finds that the NCHP is entitled to summary judgment as to Plaintiff's state law claims brought under the Act.

### iii.   Federal claims against Defendant Baity, in his official capacity

Plaintiff has sued Baity in his official capacity and individual capacity. Although neither party's briefing directly addresses Plaintiff's federal claims against Baity in his official capacity, the Court finds that Baity is entitled to summary judgment on these claims.

"[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the

---

[8] Here again, Plaintiff makes no argument in response to this contention and has, essentially, conceded the issue. *See Brand*, 352 F. Supp. 2d at 618.

State itself.'" *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 71). States and state officials "acting in their official capacities" are outside the class of persons subject to liability under § 1983. *Will*, 491 U.S. at 71. Section 1983 does, however, permit official capacity suits seeking injunctive relief against state officials. *See Graham*, 473 U.S. at 167 n.14 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."). The Plaintiff in this action does not seek injunctive relief. Plaintiff seeks monetary damages against all Defendants, including Baity in his official capacity. (ECF No. 1 at 13–14.) Accordingly, because Baity, a North Carolina Highway Trooper, is a state actor, Plaintiff's official capacity claims are, in effect, claims against the State which is not a "person" under § 1983. *See North Carolina ex rel. Ayers v. Sellers*, No. 2:06CV4, 2007 WL 1825180, at *3 (W.D.N.C. June 25, 2007) ("A State Trooper or the State of North Carolina is simply not a person within the meaning of Section 1983." (citing *Monell*, 436 U.S. at 658)). Baity is therefore entitled to judgment as a matter of law as to the § 1983 claims against him in his official capacity.

iv.  <u>Federal claims against Defendant Baity, in his individual capacity</u>

In contrast to suits against state officials in their official capacity, "state officials sued in their individual capacities are 'persons' for purposes of § 1983." *Hafer*, 502 U.S. at 23. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165.

1.  <u>Excessive force</u>

Plaintiff alleges that "[t]he application of force during detainment by Defendant Baity was not in a good faith effort to maintain or restore order or within the bounds of his duty as a State Trooper, but instead malicious, gross, and conducted for the sole purpose of causing

17

harm to Plaintiff outside the scope of his employment as a State Trooper." (ECF No. 1 ¶ 40.) While Baity does not specifically present arguments regarding Plaintiff's claim of excessive force, he contends, however, that "he is entitled to judgment as a matter of law as to all of Plaintiff's claims," (ECF No. 41 at 1–2), and that his motion relies "upon the documents filed in the case thus far." (ECF No. 35 at 1.) The Court's review of the documents in the record reveals that there is a genuine dispute as to whether Baity used excessive force during the arrest and pretrial detention of Plaintiff.

Under § 1983, an excessive force claim is analyzed by "identifying the specific constitutional right allegedly infringed by the challenged application of force . . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Howerton v. Fletcher*, 213 F.3d 171, 173 (4th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Here, the specific constitutional rights allegedly infringed are Plaintiff's rights against unreasonable seizure under the Fourth Amendment, and his rights under the Due Process Clause of the Fourteenth Amendment.

Under the Fourth Amendment, one has the "right to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees are protected from the use of excessive force that amounts to punishment. *Connor*, 490 U.S. at 395 n.10. "[S]uch 'punishment' can consist of actions taken with an 'expressed intent to punish.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Bell v. Wolfish*, 441 U.S.

520, 538 (1979)).  Courts employ an objective reasonableness standard to analyze excessive force claims under the Fourth Amendment and Fourteenth Amendment.  *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (explaining that Fourth Amendment excessive force claims are analyzed under the objective reasonableness standard); *see also Kingsley*, 135 S. Ct. at 2473 (concluding that "the appropriate standard for [assessing] a pretrial detainee's excessive force claim is solely an objective one").  Under this standard, the officer's "underlying intent or motivation" is irrelevant; rather the focus is on "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Connor*, 490 U.S. at 397; *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001); *see Kingsley*, 135 S. Ct. at 2473 (finding that a court must determine objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight").

Here, although Baity moves for summary judgment on all claims, he does not advance an argument in his brief specifically seeking summary judgment on Plaintiff's excessive force claim.  As Plaintiff points out in his response brief, Baity's account of the facts "is in direct conflict" with Plaintiff's account, and there are disputed facts in this case, including facts related to the use of force by Baity on Plaintiff.  (ECF No. 40 at 5.)  On summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party – here, the Plaintiff. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).  The evidence before the Court related to the issue of whether excessive force was used during Plaintiff's arrest and subsequent pretrial detention consists primarily of testimony by each party recounting contradictory versions of the events surrounding Plaintiff's arrest and pretrial detention.

According to Plaintiff, during his arrest in the gas station parking lot, Baity tightly "clamped" handcuffs on his hands which were too tight and painful. (ECF No. 40-2 at 16:14–16:19.) Plaintiff also testified as follows:

> Q.     Did Trooper Baity put his hands on you in any other way at the Exxon station other than to put the handcuffs on you?
>
> A.     I believe that once he got–taken me to his car and got me out of dash-cam range, I believe to the best of my memory that he slung me down right then before he put me in the car. To the best of my memory, I believe he did that.
>
> Q.     When you say he slung you down, what do you mean?
>
> A.     Jerked to the ground.

(*Id.* at 18:11–18:20.) Additionally, Plaintiff testified that, while at the Detention Center, Baity slammed his face into the walls "like six times." (*Id.* at 21:10–11.) He also "believe[s]" he was kicked or "hit under the chin." (*Id.* at 21:14–16.) Plaintiff testified that "a sheriff–his name is Ford," (*id.* at 21:2, 22:1–6), also played a role in beating him at the Detention Center, and that "they almost killed me." (*Id.* at 22:8–9.)

In direct contrast to Plaintiff's account, Baity denied using excessive force on Plaintiff. Baity testified, via his affidavit, that following Plaintiff's involvement in a minor traffic altercation, he encountered Plaintiff in the gas station parking lot where he attempted to "perform several standardized field sobriety tests on Plaintiff" who appeared "noticeably impaired." (ECF No. 36-1 ¶¶ 5, 7.) According to Baity, "plaintiff was unable to follow my instructions [and] Plaintiff then refused any further testing." (*Id.* ¶ 7.) Baity then arrested Plaintiff in the parking lot for Driving While Impaired. (*Id.* ¶ 8.) Baity testified that "[a]t no

time . . . did I hit, punch, kick or otherwise assault plaintiff. The only force I used against plaintiff was that necessary to place him in handcuffs and to assist him into and out of my patrol vehicle and up from the ground after he fell." (*Id.* ¶ 25.) Baity also stated that he, at no time, witnessed "anyone else hit, punch, kick or otherwise assault plaintiff, [and] [t]he only injuries plaintiff received while in [Baity's] custody were a bloody lip and a facial abrasion received when [plaintiff] fell on his face outside of [Baity's] patrol car." (*Id.* ¶ 26.) In his summary judgment brief Baity states that "[t]he encounter between [himself] and plaintiff in the [gas station] parking lot was recorded by the dashcam vehicle camera," and "[a]ll movements inside the Detention Center were recorded. (ECF No. 36 at 3.) These recordings were not, however, submitted as part of the record now before the Court.

Where, as here, the parties present conflicting accounts, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). While Plaintiff's deposition testimony recounted many details surrounding Baity's alleged use of excessive force, Plaintiff's testimony is replete with a response of "I can't recall"[9] to a number of questions regarding other details surrounding his encounter with Baity. While this may raise questions regarding Plaintiff's credibility, the Court's role, at this juncture, is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Liberty*

---

[9] For example, during Plaintiff's deposition he answered, "I can't recall" in response to questions regarding: (i) his activities prior to his encounter with Baity; (ii) the length of time he had been at the gas station prior to Baity's arrival; (iii) whether there was anyone else at the gas station; (iv) whether he had an accident on the evening in question; (v) whether he suffered any cuts or bruises when he was allegedly thrown to the ground by Baity in the parking lot; and (vi) whether he was drunk on the night in question. (ECF No. 40-2 at 12:8–17; 14:24–15:7; 19:6–8; 20:4–6).

*Lobby*, 477 U.S. at 249. Accordingly, given that the only evidence before the Court on Plaintiff's excessive force claim is the parties' conflicting testimony regarding the circumstances of Plaintiff's arrest and pretrial detention, the Court finds that a genuine issue of material fact remains as to this claim. Thus, Baity, in his individual capacity, is not entitled to summary judgment on this claim.

### 2. Deliberate indifference to Plaintiff's medical needs

Baity contends that he is entitled to summary judgment on Plaintiff's claim of deliberate indifference under the Fourteenth Amendment because the record before the Court proves "conclusively that there is no genuine issue of material fact that [Baity was] indifferent to plaintiff's medical condition or failed to provide emergency medical care." (ECF No. 36 at 12.) The Court agrees.

The Fourth Circuit has held that "the due process clause mandates the provision of medical care to detainees who require it." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Specifically, "[p]retrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs." *Id.* (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992)).

Here, the record does not support Plaintiff's bare allegations of Baity's deliberate indifference to his medical needs. *See United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) ("Where . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). Plaintiff has repeatedly claimed that his requests for medical care were "ignored" and "denied." (ECF No. 1 ¶¶ 22,

22

25; ECF No. 40 at 3; ECF No. 40-2 at 22:19–21, 24:4–16.)  Plaintiff also testified that he was "screaming" and "hollering out loud for medical treatment" but the Defendants, including Baity, "did nothing."  (ECF No. 40-2 at 22:19-21.)  However, as Baity argues, the record reflects that contrary to Plaintiff's claims, his medical needs were neither ignored nor disregarded.  Specifically, the evidence shows that following Plaintiff's appearance before the Magistrate, Plaintiff was transported by Baity to Forsyth County Emergency Services ("EMS") where Plaintiff was seen at approximately 12:50 a.m. on November 2, 2011.  (ECF No. 36-1 ¶¶ 20–22; ECF No. 36-2 at 1–5.)  The EMS medical record reflects that although Plaintiff complained of "jaw pain and a possible broken jaw, . . . after multiple attempts by [Forsyth County] ems and nchp, [Plaintiff] refused to allow for assessment."[10]  (ECF No. 36-1 at 1.)  Moreover, the Court notes that Plaintiff has failed to offer any responsive argument to Baity's contention that he is entitled to summary judgment as to this claim.  Plaintiff has therefore conceded this issue.  Accordingly, the Court finds that Baity, in his individual capacity, was not deliberately indifferent to Plaintiff's medical needs and he is therefore entitled to summary judgment as to this § 1983 claim.

> v.  State law claims under the North Carolina Tort Claims Act (the "Act") against Baity, in his official capacity

In his Complaint, Plaintiff claims that Baity is liable under the Act "for failure to provide emergency assistance to Plaintiff through departmental and interdepartmental policies or ignoring of such policies that resulted in Plaintiff to continue to experience pain and

---

[10] Plaintiff suggests in his deposition that Baity "forged a document stating that he took me to an EMT station.  He never took me anywhere.  I stayed in that jail until the next day."  (ECF No. 40-2 at 23:14–22)  Yet Plaintiff, in his summary judgment response brief, advances neither an argument nor any evidence in support of this bare assertion.  The Court therefore rejects this contention.

suffering instead of receiving treatment." (ECF No. 1 ¶ 48.) Beyond this allegation, however, Plaintiff fails to address Baity's argument that "plaintiff's attempt to bring suit against the state in any forum other than the North Carolina Industrial Commission is improper." (ECF No. 36 at 11.) Plaintiff has, thus, conceded this issue.

As previously discussed, the Act, "provides a limited waiver of immunity and authorizes recovery against the State for negligent acts of its 'officer[s], employee[s], involuntary servant[s] or agent[s]." *White v. Trew*, 366 N.C. 360, 363, 736 S.E. 2d 166, 168 (2013) (alterations in original) (quoting N.C. Gen. Stat. § 143-291(a)). However, suits against the State for the "intentional acts of these individuals are not compensable" under the Act. *Id.* The North Carolina Industrial Commission is the exclusive original forum to vindicate rights under the Act. *See* N.C. Gen. Stat. § 143-291(a). Consequently, this Court lacks jurisdiction to hear claims brought under the Act and Baity, in his official capacity, is entitled to judgment as a matter of law as to this claim.

vi. <u>Assault and battery claim against Baity</u>

Plaintiff contends that "Baity's intentional use of force resulted in multiple injuries, including a large abrasion to the face and a broken jaw, which resulted in Plaintiff's hospitalization and need for emergency surgery." (ECF No. 40 at 6.) Baity fails to specifically address this claim in his summary judgment brief and, instead, states generally, that "he is entitled to judgment as a matter of law as to all of Plaintiff's claims," (ECF No. 41 at 1–2), and that his motion relies "upon the documents filed in the case thus far" (ECF No. 35 at 1).

Under North Carolina law, "[a]n assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow."

*Dickens v. Puryear*, 302 N.C. 437, 444, 276 S.E. 2d 325, 330 (1981). The evidence before the Court on this issue includes the deposition testimony of Plaintiff recounting the manner in which he alleges he was "critically injured" and "almost killed" at the hands of Baity, (ECF No. 40-2 at 21:19, 23), as well as the contradictory testimony of Baity stating that "[a]t no time . . . did [he] hit, punch, kick or otherwise assault plaintiff" (ECF No. 36-1 ¶ 25).

As a result, the Court finds that there is a material factual dispute as to whether Baity committed the intentional torts of assault and battery against Plaintiff. Baity is therefore not entitled to summary judgment as to this claim. Moreover, since Plaintiff's assault and battery claim forms "part of the same case or controversy" as the remaining § 1983 excessive force claim against Baity in his individual capacity, the Court, in its discretion, will retain supplemental jurisdiction over this claim. *See* 28 U.S.C. 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy.").

### c. Qualified Immunity

Finally, the Court notes that, in their Answer, all Defendants have asserted the doctrine of qualified immunity as an affirmative defense to Plaintiff's federal claims, and the Schatzman Defendants have also asserted the related doctrine of public officer's immunity as to the state law claims. (*See* ECF No. 3 at 8; ECF No. 5 at 7; ECF No. 13 at 8.)

The Baity Defendants, in their Answer, state: "These answering Defendants further moves [sic] to dismiss Plaintiff's Complaint and asserts [sic] the defense of qualified immunity." (ECF No. 5 at 7.) Also, in their unopposed Motion to Continue Pre-Trial

Deadlines and Jury Trial (ECF No. 44), the Baity Defendants state that they have "raised the defense of qualified immunity."  (ECF No. 44 ¶ 7.)  Despite having raised this affirmative defense, to the extent the Baity Defendants seek dismissal of Plaintiff's claims based on qualified immunity, they have failed to properly move this Court for such relief in compliance with the Local Rules.  The Local Rules of this Court require that "[a]ll motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief."  L.R. 7.3(a).  The Rules further require that each motion "shall be set out in a separate pleading [and] shall state with particularity the grounds therefor, shall cite any statute or rule of procedure relied upon, and shall set forth the relief or order sought."  L.R. 7.3 (a), (b).  No such motion to dismiss, accompanied by the requisite supporting brief has been filed with this Court.  In addition, nowhere in Defendants' summary judgment motions and supporting briefs do they seek judgment as a matter of law based on qualified immunity and/or public officer's immunity.  The Court need not address, however, whether the doctrines of qualified immunity and/or public official immunity apply as it relates to each Defendant, except Baity in his individual capacity, since the Court has found that those Defendants are each entitled to summary judgment.

Notwithstanding the Local Rules violations, the Court will hold a pre-trial hearing on the issue of qualified immunity with respect to the remaining § 1983 claim against Baity in his individual capacity.  Qualified immunity is an "*immunity from suit* rather than a mere defense to liability . . . [which is] effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The Court must therefore decide as a matter of law whether the defense of qualified immunity applies to the remaining § 1983 claim against Baity

26

in his individual capacity. Accordingly, the Court reserves ruling on the issue of qualified immunity as to Baity in his individual capacity until the date and time set forth below.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Schatzman Defendants' Motion for Summary Judgment (ECF No. 30) on all claims is GRANTED, and each of those Defendants are hereby dismissed with prejudice from this lawsuit.

IT IS FURTHER ORDERED that the Baity Defendants' Motion for Summary Judgment (ECF No. 35) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to all claims against the North Carolina Highway Patrol, and the North Carolina Highway Patrol is hereby dismissed with prejudice from this action. In addition, the motion is GRANTED as to all § 1983 claims against Baity in his official capacity, the § 1983 claim of deliberate indifference against Baity in his individual capacity, and all claims against Baity in his official capacity under the North Carolina Tort Claims Act. The motion is DENIED as to the § 1983 claim of excessive force against Baity in his individual capacity, and the state law claims of assault and battery.

IT IS FURTHER ORDERED that the remaining parties shall appear before this Court for a pre-trial hearing on the issue of qualified immunity with respect to the remaining § 1983 claim against Baity in his individual capacity. The hearing shall occur on Wednesday, October 5, 2016 at 9:30 a.m., in Winston-Salem, North Carolina in Courtroom No. 1.

This, the 23rd day of September, 2016.

_____/s/ Loretta C. Biggs_____
United States District Judge